UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

William C., )
        Plaintiff, )
)
v. ) No. 18 CV 50341
) Magistrate Judge Iain D. Johnston
Andrew Saul, )
Commissioner of Social Security, )
)
        Defendant. )

**MEMORANDUM OPINION AND ORDER**

This is yet another in a series of recent cases before this Court addressing the narrow issue of how high a Social Security disability claimant with edema (swelling) must elevate his leg to be able to work. The administrative law judge ("ALJ") agreed that plaintiff, who has deep vein thrombosis and who has been receiving ongoing Coumadin therapy for several years, would need to elevate his right leg to avoid painful and job-disrupting swelling. Plaintiff's doctors have repeatedly told him to elevate his legs, and also to avoid prolonged sitting or standing. But unfortunately, they never stated how high this elevation should be. Perhaps they left this question up to plaintiff's discretion, although this conclusion is not clear. At the hearing, the ALJ asked plaintiff this question, and he answered: "at a level close to or above my heart." R. 37. The ALJ then asked plaintiff's counsel whether there were any medical opinions recommending this particular height. Counsel did not know of any. At the end of the hearing, the ALJ asked the vocational expert ("VE") how high a person would be allowed to elevate his or her legs while working a sedentary job. The VE stated that waist level would be permitted, but no higher. R. 46-47. In his written decision, the ALJ concluded that plaintiff could do sedentary if he were

1

allowed (among other things) to elevate his right leg to "waist level while working in a seated position." R. 15.

Plaintiff's argument for a remand is simple. He asserts that the ALJ provided no explanation for choosing waist over heart level. Plaintiff complains that the ALJ did not cite any factual or medical basis for this conclusion—basically, plaintiff argues, this height level was picked out of thin air or, if you are cynically inclined, was picked to coincide with the VE's testimony. The ALJ's only discussion was the following:

> [Plaintiff's] impairments also limit him to a reduced degree of certain postural activities, and require [him to] elevate his legs to approximately waist level while seated in order to manage his lower extremity symptoms. These limitations are accommodated by the above residual functional capacity, to the degree established by the objective evidence.

R. 16. This statement is conclusory by any measure. There is no analysis. The ALJ did not even acknowledge that he was implicitly rejecting plaintiff's testimony about regularly elevating his leg to heart level. By not offering an explanation, the ALJ failed to satisfy the basic and well-known requirement of providing a logical bridge from the evidence to the conclusion to enable this Court to trace the path of his reasoning.

This Court sees no need to offer an elaborate analysis—in part because the conclusion is clear, but also because this Court has already addressed these same arguments in three factually-similar cases. *Sherry P. v. Berryhill*, 2019 WL 1584560 (N.D. Ill. April 12, 2019); *Tina T. v. Berryhill*, 2019 WL 354978 (N.D. Ill. Jan. 29, 2019); *Cossey v. Berryhill*, 2018 WL 4361927 (N.D. Ill. Sept. 13, 2018). In each of these cases, the Court ordered a remand because the ALJ failed to explain why a particular height level was chosen for the RFC. *Sherry P.*, 2019 WL 1584560 at *3 ("The ALJ did not cite any evidence to support his 'below waist level' elevation finding[.]"); *Tina T.*, 2019 WL 354978 at *3 ("[N]one of the medical evidence or testimony

suggests that Plaintiff needed to elevate her legs only as high as footstool."); *Cossey*, 2018 WL 4361927 at *1 ("The recommendation to elevate the leg 12 to 16 inches was one the ALJ apparently came up with on his own."). Two of these cases (*Tina T.* and *Sherry P.*) involved the same ALJ as here.

The Government's only counter-argument is to suggest that it was plaintiff's burden to procure a medical opinion. This may be good advice, but as we held in *Sherry P.*, even if a plaintiff fails to submit such an opinion, this is not a license for the ALJ to simply "determine the necessary height of elevation himself." 2019 WL 1584560 at *3. Also, as we noted in *Cossey*, the Mayo Clinic's website entry on edema advises patients to "[h]old the swollen part of [their] body above the level of [their] heart several times a day." 2018 WL 4361927 at *2. Although this one reference is not definitive, it does suggest that there may be a medical rationale supporting plaintiff's testimony.

In sum, any further analysis would be a waste of judicial resources given that these arguments have already been adequately covered in the above cases, which the reader may consult if further explanation is needed. As we lamented in *Tina T.*, the song remains the same. On remand, the ALJ should consult a medical expert and should (among other things) make detailed findings not only about the necessary leg elevation level, but also about the frequency and length of any required periods of elevation.

## CONCLUSION

For the above reasons, plaintiff's motion for summary judgment is granted, the Government's motion is denied, and the case is remanded for further proceedings.

Date: February 13, 2020     By: _____
                                Iain D. Johnston
                                United States Magistrate Judge